# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    **v.**                                  **Case No. 10-CR-146**

**RICHARD KERNER**
        **Defendant.**

---

## DECISION AND ORDER

Defendant Richard Kerner, charged with marijuana distribution, moved to suppress evidence seized from his car following a traffic stop. The magistrate judge handling pre-trial proceedings in this case held an evidentiary hearing, then issued a recommendation that the motion be denied. Specifically, the magistrate judge found that defendant consented to the search.

Defendant objects to the recommendation, requiring me to the review the matter de novo. Fed. R. Crim. P. 59(b). De novo review does not require a de novo evidentiary hearing, even when witness credibility is at issue, see United States v. Raddatz, 447 U.S. 667, 673-76 (1980), and I find the record made before the magistrate judge sufficient for me to rule in this case.

## I. FACTS AND BACKGROUND

On May 19, 2010, at about 12:30 p.m., Milwaukee Police Department Sgt. Geoffrey Keen received a radio transmission from Officers Glen Podlesnik and Jeffrey Thiele requesting that a particular vehicle be pulled over as part of a narcotics investigation. (Sept. 9, 2010 Evid.

Hr'g Tr. at 5-6, 17, 19, 26.)[1]  Keen, operating a marked squad car, located the vehicle traveling north on South 7th Street and stopped it just south of the intersection with West Rogers Street. (Tr. at 7, 10, 18.)  Keen made contact with the driver, who identified himself as Richard Kerner (hereafter "defendant").  Keen ran a check on the vehicle and discovered that the license plate was suspended.  (Tr. at 8.)

Keen communicated with Podlesnik and Thiele, who indicated that they wanted defendant arrested.  (Tr. at 9.)  Officer Dean Drajkowski and his partner then arrived in an unmarked squad, pulling up beside Keen's marked squad.  (Tr. at 9-10, 18.)  Keen could not recall with certainty, but he believed that Drajkowski handcuffed defendant in response to the request that defendant be placed under arrest.[2]  (Tr. at 11, 19, 22.)  Keen testified that defendant was removed from the vehicle and seated on the curb next to Keen's squad (Tr. at 12), and Drajkowski asked defendant for consent to search the vehicle (Tr. at 14).  Defendant consented to the search, pursuant to which officers recovered a small amount of marijuana. (Tr. at 14.)  Keen testified that after the other officers arrived he supervised but did not direct their activities.  (Tr. at 19.)  Keen called for another squad to convey defendant from the scene and for a tow of the vehicle, then left.  (Tr. at 15, 21.)  Keen recalled moderate traffic on 7th Street at the time, and that the police radios were "squawking."  (Tr. at 20.)

Officer Drajkowski initially testified that when he arrived on the scene as back-up (in response to Podlesnik and Thiele's general call) defendant was already outside of his vehicle.

---

[1]Defendant does not challenge the stop.

[2]Drajkowski testified that he too was uncertain, but he believed that either his partner, Brent Miscichoski, or Keen handcuffed defendant.  (Tr. at 35.)  Drajkowski further testified that he believed defendant was cuffed after the search.  (Tr. at 36.)

(Tr. at 29, 31.)  However, he later stated that he believed defendant was still in the car when he arrived; he and Sgt. Keen then approached and asked defendant to step out.  (Tr. at 33-34, 35.)  Drajkowski asked defendant if there was anything illegal in the car, and defendant said no.  He then asked defendant for consent to search, and defendant said yes.  (Tr. at 29.)  Drajkowski then searched the car, locating a small amount of marijuana inside the center console.  (Tr. at 29.)  Drajkowski testified that he made no threats and applied no physical pressure to obtain consent, and that defendant seemed lucid and cooperative.  (Tr. at 30, 36.)

Defendant presented two witnesses to dispute the officers' contention that he consented to the search.  Defendant's sister-in-law Gladyvel Ortiz testified that as she was walking to the store with a group of other people she saw defendant being pulled over.[3]  (Tr. at 39-40.)  She testified that the officers asked defendant for consent to search, defendant said no, but the officers searched anyway.  (Tr. at 43.)  Marivel Mercado, whose aunt is married to defendant, testified that the officer asked for consent, defendant said no, but the officer said, "That sounds like yes to me."  (Tr. at 60, 61.)  Aside from both claiming that defendant declined consent, however, these two witnesses varied on important details and could not explain others.  As the magistrate judge noted, they could not seem to keep their stories straight.

Ortiz initially testified that she was across the street from defendant during this interaction, on Rogers (Tr. at 46), about twenty-five feet away (Tr. at 47).  However, in response to the magistrate judge's attempt to clarify, she later testified that she was walking on the east side of 7th Street in a northerly direction, and that defendant was pulled over on the west side, which would mean either that defendant was driving on the wrong side of the

---

[3]The group apparently consisted of Ortiz and her two children, Ortiz's friend and her daughter, and Marivel Mercado.  The children were all under the age of five.  (Tr. at 64.)

3

street, or that he was traveling south, contrary to all of the other evidence. Ortiz further stated in response to the magistrate judge that she was standing on the southeast corner of the intersection (Tr. at 55), whereas her initial testimony seemed to place her on the northeast corner of 7th and Rogers.

Mercado testified that she witnessed the encounter from across 7th Street (presumably, from the west side) (Tr. at 60), but she later admitted that she was not sure on what street the stop occurred (Tr. at 66). Nevertheless, despite confirming her position "across the street" (Tr. at 67), she claimed that she was standing about four or five feet away from defendant (Tr. at 66), which would be physically impossible no matter which street was involved. When the magistrate judge attempted to clarify her testimony, Mercado said that defendant was pulled over and stopped on Rogers or Beecher, but she then said he was facing north, which would be impossible as Rogers and Beecher run east/west. (Tr. at 71.) Mercado also said that defendant was stopped on the east side of the street, and she was on the west side. (Tr. at 71-72.) Mercado ultimately admitted that she recalled little of the day's events, other than the specific conversation between defendant and the officers about consent. (Tr. at 67.)

In addition to their confusion regarding positioning, the two defense witnesses varied on other significant matters. Mercado testified that defendant was still in the car when the officers asked for consent (Tr. at 62), but Ortiz said he was already out of the car at that time (Tr. at 44). Ortiz testified that she immediately called her sister (defendant's wife) to advise her of the situation (Tr. at 46), but Mercado said that Ortiz did not have her phone with her and thus called no one; Mercado instead claimed that <u>she</u> (Mercado) called defendant's wife (Tr. at 64-65), and only <u>after</u> the search (Tr. at 68). Based on these and other contradictions noted in his recommendation, the magistrate judge found the government's witnesses more credible.

4

## II.  DISCUSSION

Warrantless searches, such as the one defendant challenges here, are unreasonable per se unless some exception applies.  United States v. Dorsey, 27 F.3d 285, 290 (7th Cir. 1994).  One such exception is consent, which "lifts" the warrant requirement.  United States v. Stribling, 94 F.3d 321, 324 (7th Cir. 1996).  The government bears the burden of proving by a preponderance of the evidence that consent was voluntarily given.  See United States v. Basinski, 226 F.3d 829, 833-34 (7th Cir. 2000).  The government met its burden here.

Like the magistrate judge, I find the testimony of Sgt. Keen and Officer Drajkowski that defendant consented more credible.  Although the officers could not recall precisely when and by whom defendant was removed from the car and handcuffed, their testimony was consistent on other material points.  Specifically, both testified that Drajkowski approached defendant, asked for consent to search the car, and defendant immediately agreed.  Keen, the supervisor in charge of the scene, credibly testified that if defendant had refused to consent he would not have permitted a search.  (Tr. at 74.)  Keen was not involved in the underlying drug investigation here, and I see no reason why he would have been motivated to allow overreaching by other officers in the case.  Finally, the officers were much closer to defendant than the defense witnesses, obviously in a much better position to clearly hear what was said.

As discussed above, and as the magistrate judge also noted, the defense witnesses' testimony had problems.  Both claimed that defendant refused consent, but they varied on other important details, such as where defendant was pulled over, where they stood in relation to defendant, whether defendant was in or out of the car when he allegedly denied consent, and which one of them called defendant's wife.  I am also skeptical of the witnesses' claims that they could clearly hear the officers' interactions with defendant, despite the sounds of

passing traffic, the distraction of three small children, and the "squawking" of the police radios.[4]

Finally, I cannot ignore the fact that Mercado and Ortiz are related to defendant, which provides some incentive for them to slant their testimony in his favor.

In his objections, defendant argues that the defense witnesses' difficulty with directions and distances should not detract from their testimony.[5]  However, the very significant variance between their versions necessary weakens their testimony; these were not minor details. Defendant argues that, despite the distance between the witnesses and the traffic stop, and despite whatever noise may have distracted her, Mercado was still able to provide a verbatim quote of the officer's response to defendant's refusal.  But this assumes that the officer actually responded, "that sounds like a yes to me," after defendant said no.  I find that the officer did not respond in that manner.  Defendant argues that the government presented no evidence that he orchestrated his witnesses' testimony; he notes their testimony that they reviewed no reports and no one told them what to say.  I need not find a conspiracy or concerted effort to deceive the court in order to find the officers' testimony, on the whole, more credible.  It is sufficient to find, given their inability to recall much of what occurred, and their distance from the encounter, that the defense witnesses' version is not reliable.

Finally, the record contains no suggestion – nor does defendant argue – that his consent

---

[4]The defense witnesses claimed that there was little traffic and that the children were silent.  I find it hard to believe, given the time of day, that traffic was not at least moderate, as Keen testified.  I also find it hard to believe that three children under the age of five would make no sound and require no supervision, such that Ortiz and Mercado could focus on and clearly hear what was said between defendant and the officers.

[5]It is true that Ortiz testified that she would give directions in terms of right and left, rather than north/south, east/west.  (Tr. at 56).  But Mercado said she would give directions in terms of north/south, east/west.  (Tr. at 72).

was involuntary. Drajkowski applied no pressure to obtain defendant's consent, and defendant appeared coherent and cooperative. See United States v. Strache, 202 F.3d 980, 986 (7th Cir. 2000). Therefore, for these reasons and those stated by the magistrate judge, I find that defendant voluntarily consented to this search.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate's judge's recommendation (R. 20) is adopted, and defendant's motion to suppress (R. 8) is **DENIED**.

**IT IS FURTHER ORDERED** that the **STATUS** scheduled for **Wednesday, November 24, 2010** will be held at **2:15 p.m.** rather than 11:30 a.m. as previously scheduled.

Dated at Milwaukee, Wisconsin, this 23rd day of November, 2010.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge