# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                                        **Case No. 10-CR-146**

**RICHARD KERNER**
    **Defendant.**

## SENTENCING MEMORANDUM

On May 19, 2010, police officers on patrol in an undercover vehicle observed defendant Richard Kerner engage in what appeared to be a hand-to-hand drug transaction with a young woman. Police stopped the woman, who admitted that she had just bought marijuana from defendant, and recovered a green leafy plant-like substance wrapped in a white napkin. The officers further learned that the female customer was seventeen years old. A short time later, officers saw defendant's car, conducted a traffic stop, and obtained consent to search, locating a small bag of marijuana in the center console. Subsequent lab tests revealed that the marijuana defendant sold the female weighed 2.04 grams, and the drugs seized from his car weighed 15.27 grams.

On June 9, 2010, police attempted to conduct a traffic stop on a vehicle operated by defendant's brother, Gilbert, but Gilbert fled at a high rate of speed and subsequently crashed the car. Gilbert and a male passenger fled on foot, while two other passengers remained on the scene. One of the remaining passenger identified defendant as the second male who fled. Officers searched the car, recovering about 15 ounces of marijuana, and a firearm on the floor by the driver's feet. Officers located and arrested Gilbert, but could not find the second male.

The government later arrested defendant and charged him with distributing marijuana to a person under the age of twenty-one, 21 U.S.C. §§ 859, 841(a)(1) & (b)(1)(D), related to the May 19, 2010 transaction. Defendant pleaded guilty to the charge, and I ordered a pre-sentence report ("PSR") and set the case for sentencing. In imposing sentence, the district court must first calculate the defendant's advisory sentencing guideline range, then determine the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010); United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008). This memorandum sets forth the reasons for my determinations on these issues.

## I. GUIDELINES

Defendant's PSR set a base offense level of 26 under U.S.S.G. § 2D1.2(a)(3) because he sold drugs to a person under the age of eighteen;[1] added 2 levels under U.S.S.G. § 3C1.2 for reckless endangerment during flight based on the June 9, 2010 chase;[2] then subtracted 3

---

[1] Section 2D1.2 applies to drug offenses occurring near protected locations or involving underage or pregnant individuals, and provides that the base offense level shall be the greatest of:

(1) 2 plus the offense level from § 2D1.1 applicable to the quantity of controlled substances directly involving a protected location or an underage or pregnant individual; or
(2) 1 plus the offense level from § 2D1.1 applicable to the total quantity of controlled substances involved in the offense; or
(3) 26, if the offense involved a person less than eighteen years of age; or
(4) 13, otherwise.

U.S.S.G. § 2D1.2. Here, the level derived from § 2D1.1 was either 6 or 8, so sub-section (3) controlled.

[2] Section 3C1.2 provides: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels."

2

levels for acceptance of responsibility, § 3E1.1, for a final level of 25. The PSR further determined that defendant qualified as a career offender under U.S.S.G. § 4B1.1 based on two prior convictions – battery by a prisoner and conspiracy to commit racketeering – resulting in a criminal history category of VI.[3] Defendant denied being involved in the June 9, 2010 chase and thus objected to the enhancement under § 3C1.2 (PSR ¶ 20), and to the inclusion of the 15 ounces of marijuana seized from the car in his drug weight (PSR ¶ 15).[4] He further objected to the PSR's career offender determination, arguing that neither alleged predicate qualified as a crime of violence under U.S.S.G. §§ 4B1.1 & 4B1.2.

I first noted that the drugs found following the June 9 chase did not affect the guideline range in this case. Whether I included those drugs or not, defendant faced an offense level of 26 under U.S.S.G. § 2D1.2(a)(3) because he sold marijuana to a person under the age of 18. Therefore, I found it unnecessary to resolve this aspect of the objection under Fed. R. Crim. P. 32(i)(3)(B). Defendant argued that level 26 was unreasonably harsh, but that was an issue for consideration under 18 U.S.C. § 3553(a), not a proper guideline objection.

Regarding the reckless endangerment issue, the application notes to § 3C1.2 explain that "the defendant is accountable for the defendant's own conduct and for conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 3C1.2 cmt. n.5. Accordingly, the court may not apply this enhancement simply

---

[3]The career offender guideline produced an offense level of 24 in this case, see § 4B1.1(b)(E), so the higher level determined under chapter two controlled. See U.S.S.G. § 4B1.1(b) ("[I]f the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply.").

[4]He also objected to the PSR's reference to the gun found in the car following the chase. (PSR ¶ 25.) However, the report proposed no guideline enhancement based on the gun.

3

because the defendant was a passenger in a vehicle that recklessly fled from the police. See United States v. Young, 33 F.3d 31, 33 (9th Cir. 1994). Rather, some form of direct or active participation is necessary in order for § 3C1.2 to apply. See United States. v. Chong, 285 F.3d 343, 346 (4th Cir. 2002) (collecting cases). The court must make a specific finding, based on the record before it, that the defendant actively caused or procured the reckless behavior at issue. See United States v. Wilfong, 475 F.3d 1214, 1220 (10th Cir. 2007). In other words, in the case of a defendant who was a passenger during a flight from police, the district court must specify its reasons for holding the defendant responsible for the driver's conduct. See Young, 33 F.3d at 33.

Here, defendant denied being in the car at all; the government presented evidence that he was. Specifically, the PSR addendum discussed the statement from the passenger that defendant was present in the vehicle during the chase; she also apparently identified defendant from a photo array. The addendum also stated that after his arrest defendant's brother made phone calls from the jail revealing that defendant was present during the June 9, 2010 incident. But absent from the record was any indication, either in the PSR or the addendum, that defendant did anything to cause or facilitate this flight from the officers. For example, the record contained no evidence that defendant told or encouraged his brother to flee, or tried to dispose of evidence during the flight, as in Wilfong and the cases cited there. 475 F.3d at 1220. Therefore, even if defendant was in the car, about which I made no finding, the enhancement did not apply.

Regarding the career offender issue, I rejected defendant's argument that battery is not a crime of violence. See U.S.S.G. § 4B1.2(a) ("The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--

4

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."). As I explained in United States v. Marciniak, No. 10-CR-184, 2011 WL 124299 (E.D. Wis. Jan. 14, 2011), battery under Wisconsin's statute requires the use of violent physical force. Wisconsin's statute is thus unlike the Florida law at issue in Johnson v. United States, 130 S. Ct. 1265 (2010), the case on which defendant primarily relied. Florida's statute can be violated by the slightest "offensive touching," while Wisconsin's law requires that the defendant cause bodily injury. 2011 WL 124299, at *2. In Marciniak, I further explained why I found United States v. Villegas-Hernandez, 468 F.3d 874 (5th Cir. 2006), which defendant also cited, unpersuasive. In deciding whether an offense qualifies as a crime of violence, the court applies a categorical approach, determining whether the conduct encompassed by the elements of the offense, in the ordinary case, qualifies as a violent crime, not whether one can hypothesize non-violent cases involving poisoned drinks or tacks placed on a chair. See James v. United States, 550 U.S. 192, 208 (2007). In any event, the Seventh Circuit has held that felony battery under Wisconsin law is a crime of violence, see United States v. Peters, 462 F.3d 716, 720 (7th Cir. 2006), and nothing in Begay v. United States, 553 U.S. 137 (2008) or other more recent Supreme Court cases casts doubt on the holding of Peters.

The more difficult question was the RICO conspiracy. As defendant noted, the elements of that offense alone do not suggest that it is a crime of violence under the categorical approach. See Federal Criminal Jury Instructions of the Seventh Circuit 317. However, courts have held that it is proper to look at the RICO predicate acts in making this sort of determination. See United States v. Ayala, 601 F.3d 256, 267 (4th Cir.), cert. denied, 131 S.

5

Ct. 262 (2010) (citing United States v. Ciccone, 312 F.3d 535, 541-42 (2d Cir. 2002); United States v. Juvenile Male, 118 F.3d 1344, 1350 (9th Cir. 1997)); see also United States v. Ivezaj, 568 F.3d 88, 96 (2d Cir. 2009), cert. denied, 130 S. Ct. 1749 (2010). After all, the government must, in a RICO prosecution, prove at least two acts of racketeering. This is not the same thing as looking at the underlying conduct, which is forbidden under the categorical approach. Rather, the court can discern the appropriate predicate acts by looking to the defendant's charging document, plea agreement, or other similar judicial record. See Shepard v. United States, 544 U.S. 13, 26 (2005). And courts have, in looking at the racketeering acts, held that RICO conspiracy can be a crime of violence. See, e.g., Ciccone, 312 F.3d at 541-42 (holding that the charged RICO conspiracy was a crime of violence under the Bail Reform Act); United States v. Doe, 49 F.3d 859, 866-67 (2d Cir. 1995) (finding that a RICO conspiracy was a crime of violence under the Juvenile Delinquency Act).

In the present case, defendant's plea agreement revealed predicate RICO acts of attempted homicide and the distribution of marijuana and possession of firearms. I noted that the attempted homicide could qualify as a crime of violence, and that the marijuana act could perhaps also qualify as a drug trafficking offense. Ultimately, though, I found it unnecessary to definitively resolve this issue. Even without the career offender designation, defendant's offense level was the same: base level 26, minus 3 for acceptance, for a final level of 23. The career offender designation did affect the criminal history category, but not by much: he rated a V based on criminal history points, VI under the career offender guideline. The ranges overlapped either way: 84-105 in category V and 92-115 in category VI. Under United States v. Sanner, 565 F.3d 400, 406 (7th Cir. 2009), the district court can decline resolve a thorny guideline issue if it will not affect the final sentence. I concluded that in this case the dispute

6

over whether defendant's RICO conspiracy case was a proper career offender predicate would not affect the sentence under § 3553(a). I therefore adopted an offense level of 23, criminal history category of V or VI, and imprisonment range of 84-105 or 92-115 months.

## II. SECTION 3553(a)

**A. Sentencing Factors**

Section 3553(a) provides that the court, in determining the particular sentence to be imposed, shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the [advisory] sentencing [guideline] range[;]
>
> (5) any pertinent policy statement . . . issued by the Sentencing Commission[;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Id.

While the guidelines serve as the starting point and initial benchmark in making this determination, Gall v. United States, 552 U.S. 38, 49 (2007), the district court may not presume

7

that a guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009). Rather, the court must make an independent determination, without any thumb on the scale favoring a guideline sentence, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007), taking into account the types of sentences available, the relevant § 3553(a) factors, and the arguments of the parties, see Gall, 552 U.S. at 49-50. The court is also free to reject any guideline on policy grounds, see, e.g., United States v. Pape, 601 F.3d 743, 749 (7th Cir. 2010); United States v. Corner, 598 F.3d 411, 414-15 (7th Cir. 2010) (en banc), particularly where the Sentencing Commission did not, in adopting the particular guideline, fulfil its "characteristic institutional role" of acting based on study, expertise, empirical data, or national experience, see Kimbrough v. United States, 552 U.S. 85, 109 (2007); see also Pepper v. United States, No. 09-6822, 2011 WL 709543, at *15 (U.S. Mar. 2, 2011) ("[O]ur post-Booker decisions make clear that a district court may in appropriate cases impose a non-Guidelines sentence based on a disagreement with the Commission's views.").

**B.  Analysis**

    **1.  The Offense**

As noted above, police officers observed defendant conduct a hand-to-hand transaction with a young woman, then drive away. Believing that they just saw a drug sale, police stopped the female and recovered marijuana. The female further advised that defendant had given her a piece of paper with his name and phone number on it. Officers then spotted defendant's car, conducted a traffic stop, and seized a small bag of marijuana pursuant to a consent search. The total amount marijuana involved in these events was about 17 grams.[5]

---

[5]As discussed above, there was also an indication that defendant and his brother may have possessed marijuana on June 9, 2010. Officers recovered about 15 ounces of marijuana

8

## 2. The Defendant

At age twenty-nine, defendant had a very serious prior record: disorderly conduct and marijuana possession as a juvenile, arising out of an incident in which he threw rocks at a highway worker; then adult convictions for endangering safety/reckless use of a dangerous weapon, arising out of a gang-related shooting; battery by a prisoner, arising out of an incident in which he kicked a correctional officer escorting him, causing deep bruises to the officer's right thigh and pain to his testicles; and finally, the RICO case discussed above. Defendant received a 5 year sentence for the RICO case, was released on April 27, 2010, and committed the instant offense within three weeks.

Defendant had been imprisoned for much of his life and consistently got back into trouble shortly after his release from custodial sentences. He admitted joining the Latin Kings street gang at a very young age, leading to his contacts with the system. He was at the time I sentenced him approaching thirty, but it did not appear that he was ready to leave this life behind. He had never held a real job.

The record did contain some positives. Defendant earned an HSED while incarcerated in 2003. He married in 2010 while finishing his RICO sentence at a halfway house. He and his wife had a child together, born in December 2010. He also had a ten year old child from a previous relationship. Defendant's wife and family remained supportive.

## 3. The Sentence

The guidelines recommended a significant period of confinement, as discussed above. Defendant requested a minimal term, pointing to the minor nature of the offense. I agreed that

---

from the car following the chase, but I found it unnecessary to resolve the issue of defendant's responsibility for those drugs.

9

if I looked at the offense conduct in isolation, a sentence far below the range would be appropriate. This case involved the sale of a very small amount of marijuana. The base level under U.S.S.G. § 2D1.1(c) for the amount seized in May 2010 would have been 6; even including the amount seized in June 2010, the level would have been 8. It was only because defendant's customer was under the age of eighteen that he faced a base level of 26. But nothing in the record suggested that defendant knew her age, or that he was targeting minors or children. The customer was seventeen, and the transaction occurred on the street by a store, not at or near a school or other place where minors would likely congregate. Section 2D1.2(a)(3) treats all offenders who deal drugs to minors the same, but under § 3553(a) the court can make a more refined assessment. A cocaine or methamphetamine dealer who targets grade school children should obviously be treated more harshly than someone, like this defendant, who sells a small amount of marijuana to a person on the cusp of adulthood. Therefore, I agreed that the offense conduct was mitigated, and that the guidelines overstated the severity of the offense.[6]

But I could not consider the offense conduct in isolation. I had to also consider defendant's prior record, the failure of previous sanctions to correct his behavior, and his poor

---

[6]The Commission originally adopted this guideline in response to § 6454 of the Anti-Drug Abuse Act of 1988, P.L. 100-690 (1988), which directed the Commission to promulgate a guideline for defendants convicted of violating statutes pertaining to drug offenses involving children. Congress directed the Commission to set an offense level 2 levels greater than the level that would have been assigned for the underlying controlled substance offense, but in no event less than level 26. Given its genesis, it is unsurprising that the Commission's "reason for amendment" pertaining to this guideline contains no explanation for setting a minimum level of 26. See United States Sentencing Commission Guidelines Manual, Appendix C – Volume I 75 (Amendment 135). The Supreme Court has held that guidelines which reflect congressional enactments, rather than the Commission's exercise of judgment and expertise, are entitled to less respect. See Kimbrough, 552 U.S. at 109.

10

performance on supervision. It took him just three weeks after his release from a federal prison sentence to commit this crime. As discussed in the PSR and the defense sentencing memorandum, defendant had been in prison most of the time since his teens, yet he continued to engage in this conduct. Even lengthy federal prison sentences did not correct his behavior. This time, with a wife and the start of a new family, one would have hoped that defendant would have had something worth staying out of trouble for, but he did not. I further noted that even though defendant's recklessly endangering safety conviction no longer qualified as a crime of violence under cases like United States v. McDonald, 592 F.3d 808, 812 (7th Cir. 2010) and United States v. High, 576 F.3d 429, 430-31 (7th Cir. 2009), under 18 U.S.C. §§ 3553(a) & 3661, the district court can consider the nature of the defendant's prior conduct in determining the risk he poses to the public, see High, 576 F.3d at 431, and I did that here.

In balancing the relatively minor nature of the crime with the aggravated nature of defendant's record, the need to protect the public, and the need to deter, I found a sentence of 54 months sufficient but not greater than necessary to satisfy all of the purposes of sentencing. This sentence was based on § 3553(a) and would have been the same even if I had agreed with defendant on the guideline issues.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 54 months. Upon release, I ordered him to serve a supervised release term of 4 years. I found this term sufficient to ensure monitoring, treatment, and legitimate employment. As conditions of supervision, I required defendant to participate in a program of testing and residential or outpatient treatment for drug and alcohol abuse, and to avoid all contact or association with the Latin Kings gang or any other gang. Other terms and conditions of the sentence appear in the

judgment.

Dated at Milwaukee, Wisconsin, this 3rd day of March, 2011.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge